NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWMEDICA OSTEONICS CORP., a New Jersey corporation and subsidiary of STRYKER CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN BAGWELL, a Texas resident, CASEY LANHAM, a Texas Resident, and INFORMD MEDICAL DISTRIBUTORS, LLC, a Texas limited liability corporation,<br><br>Defendants. | Civil Action No.: 16-1980 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants' motion to dismiss titled as one for forum non conveniens, or in the alternative to transfer. ECF No. 16. However, Defendants primary arguments are for transfer. The doctrine of forum non conveniens is mentioned briefly in their moving brief and is not argued in reply. Additionally, the Court agrees with Plaintiff, that the forum non conveniens doctrine is not applicable here, where Defendants seek transfer to another district court. *See* Pl.'s Opp'n at 28. Therefore, the Court construes Defendants' motion as one for transfer. No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. After considering the submissions of the parties in support of and in opposition to the motion, the Court denies Defendants' motion.

I.      **FACTUAL BACKGROUND**

Plaintiff Howmedica Osteonics Corporation ("HOC"), a subsidiary of Stryker Corporation, designs, manufactures, and sells orthopaedic implants, instruments, and other orthopaedic products and services. ECF No. 1 ("Compl.") at 1, ¶ 2. HOC is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Mahwah, New Jersey. *Id.* ¶ 19. While employed as sales representatives, Brian Bagwell ("Bagwell") and Casey Lanham ("Lanham") serviced HOC customers in the Houston, Texas area. *Id* ¶ 5.

A.      **Lanham**

Lanham began his employment with HOC on or about February 4, 2008. *Id.* Lanham held several different positions while working for Stryker Orthopaedics, including Trauma Sales Representative, until he voluntarily resigned on February 15, 2016. *Id* ¶ 48. Upon promotion to Recon Sales Representative, Lanham executed a "Stryker Orthopaedics Employee Non-Compete, Confidentiality and Fair Competition Agreement" ("Lanham Agreement") on or about January 8, 2010. *Id.* ¶ 56; *see also id.*, Ex. 2 (Lanham Agreement). The Lanham Agreement states:

> Employee shall not, during the course of his/her employment with Stryker Orthopaedics and for a period of up to one (1) year . . . following the termination of Employee's employment with Stryker Orthopaedics (regardless of whether Employee's termination is voluntary or involuntary, or with or without Cause . . .), directly or indirectly, whether as sole proprietor, partner, venturer, stockholder, director, officer, employee, consultant, agent or in any other capacity:
> (i) Engage or participate in any employment or activity competitive with Stryker Orthopaedics. . . .
> (ii) Solicit, induce or influence, attempt to solicit, induce or influence, or assist another to solicit, induce or influence, any of Stryker Orthopaedics' employees, agents, representatives, independent contractors or customers, or any employee, agent, representative, independent contractor or customer of any member of the Stryker Group, to alter or terminate his or her or its relationship with Stryker Orthopaedics.

*Id.* Ex. 2, ¶ 2(a) ("Restrictions").

The Lanham Agreement contains a forum selection provision in favor of New Jersey courts. *Id.* ¶ 6(i) ("Jurisdiction"). The Lanham Agreement states:

> Employee consents and agrees that ***any and all*** litigation between him/her and Stryker Orthopedics relating to this Agreement ***shall*** take place in the State of New Jersey, and Employee expressly consents to jurisdiction of the federal and/or state courts in New Jersey (the "Court").

*Id.* (emphasis added). The Lanham Agreement continues: "This Agreement shall be construed in accordance with and governed for all purposes by the laws of the State of New Jersey, without regard to its conflicts of laws principles." *Id.* ¶ 6(j) ("Governing Law").

### B. Bagwell

Bagwell began his employment with HOC on or about January 2, 2004 and held many different positions during his employment, including Trauma Sales Representative. Compl. ¶ 47. He was terminated on November 6, 2015. *Id.* Upon promotion to Trauma Sales Representative, Bagwell executed an "Employee Non-Compete, Confidentiality and Fair Competition Agreement" ("Bagwell Agreement") on or about January 5, 2007. *Id.* ¶ 55; *see also id.*, Ex. 1 (Bagwell Agreement). The Bagwell Agreement states:

> Employee shall not, during the course of his/her employment with Stryker Orthopaedics and for a period of up to one (1) year . . . following the termination of Employee's employment with Stryker Orthopaedics (regardless of whether Employee's termination is voluntary or involuntary, or with or without Cause . . .), directly or indirectly, whether as sole proprietor, partner, venturer, stockholder, director, officer, employee, consultant, agent or in any other capacity engage or participate in any employment or activity competitive with Stryker Orthopaedics. . . .

*Id.*, Ex. 1 ¶ B.1.(a). The Bagwell Agreement also has a forum selection clause in favor of New Jersey, but, unlike the Lanham Agreement, is governed by the laws of Texas. *Id.* ¶¶ D.9, D.10. The Bagwell Agreement –in bold—states:

> 8. Employee agrees that any legal action relating hereto and/or Employee's obligations under the Agreements or any other terms hereof shall be tried by

> the Court (as defined herein) and Employee waives his/her right to a trial by jury.
>
> 9. Employee consents and agrees that any and all litigation between him/her and Stryker Orthopaedics relating to the Agreements and the other terms hereof shall take place in the State of New Jersey, and Employee expressly consents to the jurisdiction of the federal and/or state courts in New Jersey (the "Court").

*Id.* HOC terminated Bagwell on or about November 6, 2015, and Bagwell executed a Separation Agreement at that time. *Id.* ¶¶ 72, 73; *see also id.*, Ex. 3 (Bagwell Separation Agreement). The Separation Agreement states: "This Agreement shall in all respects be governed by the laws of the State of Texas." *Id.* ¶ 16. The Separation Agreement continues: "*With the exception of the Non-Compete Agreement attached as Exhibit A*, this Agreement contains the entire understanding of the parties, and there are no additional promises, representations, assurances, terms or provisions between the parties." *Id.* ¶ 19 (emphasis added). Paragraph 10 of the Separation Agreement reinforces this point by providing that "Employee acknowledges and affirms the obligations set forth in the Stryker Employee Non-Competition, Confidentiality and Fair Competition Agreement that Employee signed on or about January 5, 2007, a copy of which is attached as Exhibit A . . . ." *Id.* ¶ 10 ("Non-Competition") (emphasis in original).

### C. inforMD

On February 11, 2016—prior to resigning from HOC on February 15, 2016, Lanham registered inforMD as a Texas Limited Liability Corporation. Compl. ¶¶ 48, 88. Lanham, Bagwell, along with two other individuals were named as managers of inforMD in that registration. *Id.* ¶ 88. In affidavits, Lanham and Bagwell both stated: "I am not employed by InforMD and have not received any compensation from InforMD," but neither denied that they are managers and/or principals or founders of inforMD as alleged by HOC. *See* Defs.' Br., Ex. B ¶ 9; *id.*, Ex. C ¶ 8; Compl. ¶ 135. HOC alleges that Bagwell asked Lanham to leave HOC and work for inforMD.

4

Compl. ¶ 97. Through inforMD, Bagwell and Lanham are allegedly distributing competing DJO Global, Inc., ("DJO"), Advanced Orthopaedic Solutions (AOS), and Skeletal Dynamics LLC (Skeletal Dynamics) products. *Id.* ¶ 11. HOC alleges that, on behalf of inforMD, Bagwell and Lanham are unfairly competing against HOC and violating their Agreements by soliciting specific doctors and hospitals in the Houston area that they solicited while at HOC. *Id.* ¶ 100.

## II. LEGAL STANDARD

28 U.S.C § 1404(a) provides that, "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See* 28 U.S.C. § 1404(a) ; *see also Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 269, 297 n.5 (3d Cir. 2001). The party moving for transfer bears the burden of demonstrating that a transfer is appropriate. *See Jumara v. State Farm Ins. Co.* 55 F.3d 873, 879 (3rd Cir. 1995).

The Third Circuit has identified private and public factors for courts to consider when deciding whether to transfer an action. *See id.* The "private interest" factors include: (1) Plaintiff's choice of forum; (2) defendant's preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. *See id.* The "public interest" factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty arising from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable law. *See id.*

"Within this framework, a forum selection clause generally is treated as a manifestation of the parties' preferences as to a convenient forum." *Id.* at 880. Where there is a forum selection clause, the Supreme Court has ruled that the analysis changes:

> [A] court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . .
>
> As a consequence, a district court may consider arguments about public-interest factors only. *Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.* . . .
>
> [W]hen a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in some circumstances may affect public-interest considerations. . . .

*Atlantic Marine Constr. Co. v. U.S. Dist. Ct. of W.D. of Tex.* 134 S. Ct. 568, 581-82 (2013) (emphasis added).

### III. LEGAL DISCUSSION

#### A. Defendant Lanham

Defendant Lanham argues that this Court is not a proper venue for HOC's claims, and as such the Court should transfer the case to the United States District Court for the Southern District of Texas in accordance with 28 U.S.C. § 1404(a). Defs.' Br. at 1. Because the Lanham Agreement contains a plain, mandatory forum selection clause in favor of New Jersey courts, *Atlantic Marine* instructs that the Court should deem the private interest factors to weigh in favor of New Jersey, and only consider the six public interest factors. The Court finds that the public interest factors weigh in favor of keeping the case in New Jersey. First, this Court's judgment will be enforceable

in Texas and New Jersey. Second, adjudication has already begun in the District of New Jersey, and the Court is familiar with the issues, so it would be expedient to adjudicate the case here. Third, regardless of overall statistics for the District of New Jersey this Court has no congestion of cases. Fourth, New Jersey has an interest in deciding a controversy involving business located in the state. Five, the public policy of the fora encourages upholding forum selection clauses and protecting local businesses. And, sixth, this Court is familiar with the applicable law, New Jersey. Overall, Lanham has presented no compelling argument for why this is the unusual case that should override the agreement he entered into. For these reasons, transfer with respect to the claims against Lanham is denied.

### B.  Defendant Bagwell

Defendant Bagwell also argues that this Court is not a proper venue for HOC's claims, and that the Court should transfer the case to the United States District Court for the Southern District of Texas in accordance with 28 U.S.C. § 1404(a). Defs.' Br. at 1. Bagwell asserts that, unlike the Lanham Agreement, there is no clear forum selection clause applicable with respect to him. Defs.' Reply Br. 3. Instead, he argues that the Bagwell Agreement and Separation Agreement contain conflicting forum selection clauses, making neither mandatory. *Id.* The Court disagrees, and finds that there are not conflicting provisions.

The Bagwell Agreement contains a plain, mandatory forum selection clause—in bold—in favor of New Jersey jurisdiction. *See* Compl., Ex. 1, ¶¶ 8, 9. The Bagwell Separation Agreement does not specify a forum for suit. *See id.*, Ex. 3, ¶ 16. More importantly, the Separation Agreement—which Bagwell argues creates a conflict with the Bagwell Agreement—expressly incorporates and attaches the Bagwell Agreement. *See id.*, Ex. 3, ¶¶ 10, 19.

7

The case relied on by Defendants, *Samuels v. Medytox Solutions, Inc.*, No. 13-7212, 2014 WL 4441943, at *4 (D.N.J. Sept. 8, 2014), is not to the contrary. In *Samuels* the Court found a conflict where there were two contracts each with a forum selection clause which expressly specified a different forum. *Id.*, at *1 (one specifying Florida, the other New Jersey). In contrast, in the present case, one agreement specifies the forum of New Jersey, and the other—which incorporates the former—is silent on forum. In short, there is no conflict. Additionally, *Samuels* expresses the policy concern of litigating identical claims in multiple forums, which, in this case would favor not splitting the Lanham and Bagwell cases between New Jersey and Texas. *See id.*, at *4.

As noted above with respect to the Lanham Agreement, since the Bagwell Agreement contains a plain, mandatory forum selection clause, only the public interest factors are to be considered. *See Atlantic Marine*, 134 S. Ct. at 582. Because of the similarity of the facts, the only difference in analysis with respect to Bagwell is that his agreement provides that Texas, not New Jersey, law will govern. This Court can easily apply Texas as well as New Jersey law (and no one has argued there is any meaningful difference between the two). However, even if the Court construes this one factor as weighing in favor of transfer, it does not outweigh the other factors favoring New Jersey adjudication, including the lack of efficiency of splitting the claims. Like Lanham, Bagwell has not presented a compelling argument for how this is the unusual case where transfer against the forum selection clause designation is appropriate. The Court therefore also denies transfer of Bagwell's claims.

### C. Defendant inforMD

Defendant inforMD is not a signatory of either the Lanham or Bagwell Agreements. Nevertheless, HOC seeks to enforce those agreements forum selection clauses against it. Pl.'s

Opp'n at 15. In the context of forum selection clauses, courts in this District have limited enforcement against non-signatories to situations in which the non-signatory is either: (1) a third-party beneficiary of the contract containing the clause; or (2) so closely related to the contractual relationship at issue that the party should be able to foresee that courts will enforce the clause against it. *See Beth Schiffer Fine Photographic Arts*, Inc., No. 10-cv-5321, 2014 WL 1908500, at *4 (D.N.J. May 13, 2014) ("The Court concludes that Plaintiff may be bound by the forum selection clause found in the warranty between PoliElettronica and Colex only if it is a third party beneficiary of that warranty or it was closely related to the contractual relationship.") (internal quotations omitted); *Donachy v. Intrawest U.S. Holdings, Inc.*, No. 10-4038, 2011 WL 2973543, at *2 (D.N.J. July 21, 2011) ("Forum selection clauses may also bind third parties where the third party should have foreseen governance by the clause.") (internal quotations omitted). But, the "closely related" doctrine is a very "narrow one." *Beth Schiffer*, 2014 WL 1908500, at *5.

Here, Lanham allegedly registered inforMD while he was still employed by HOC. Both the Lanham and Bagwell Agreements restrict Lanham and Bagwell from competing with HOC "directly or indirectly, whether as sole proprietor, partner, venturer, stockholder, director, officer, employee, consultant, agent or in any other capacity." Compl., Ex. 1, ¶ B(1)(a); *see id.*, Ex. 2, ¶ 2(a). Thus, their agreements prohibit them from competing whether as an individual employee of another company or as an owner or partner of a new company. Under such facts, inforMD, which is a company allegedly created by Lanham and Bagwell and which is allegedly competing with HOC, was well aware of the agreements and should have foreseen being governed by their agreements. *See, e.g., First Fin. Mgmt. Grp., Inc. v. Univ. Painters of Baltimore, Inc.*, No. 11-5821, 2012 WL 1150131, at *4 (E.D. Pa. Apr. 5, 2012) (finding non-signatories to be bound where they were working together in a "small family-run business" "allegedly competing in violation of

the non-compete clause in the contract"); *Jordan v. SEI Corp.*, No. 96–1616, 1996 WL 296540, at *6 (E.D. Pa. June 4, 1996) ("Forum selection clauses bind nonsignatories that are closely related to the contractual relationship or that should have foreseen governance by the clause.").

The case relied on by Defendants, *RK Environmental, LLC v. Lloyd*, No. 2:15-cv-3201, 2015 WL 8536556, at *7 (D.N.J. Nov. 25, 2015), is distinguishable from the present case. In *RK Environmental*, the company that the Plaintiff tried to enforce the forum selection clause against had simply employed an individual who had signed a non-compete agreement with the Plaintiff. 2015 WL 8536556, at *7. The concern in *RK Environmental* was that "Plaintiff's interpretation of the 'closely related' doctrine is entirely too expansive and would potentially subject every defendant alleged to have tortiously interfered with a contract to any forum selection clause or arbitration provision contained in that contract." *Id.* In *RK Environmental* the "Plaintiff argue[d] that Defendant FDB is 'closely related' to the Agreement because it was aware of the agreement between Plaintiff and Defendant Lloyd and '[d]espite this awareness, [Defendant] FDB pursued and hired [Defendant] Lloyd in order to obtain [Defendant] Lloyd's assistance to solicit several of [Plaintiff's] clients, as well as to gain confidential information and trade secrets disclosed to [Defendant] Lloyd during his employment with [Plaintiff] — all in violation of the Agreement." *Id.* (alteration in original). The facts of this case differ from those present in *RK Environmental*, and as such, a concern of overbroad potential application is not present here.

This is not a case where Lanham and Bagwell allegedly went to work for an already formed company. Bagwell and Lanham agreed not to compete with HOC either individually or via a different business form. They then are alleged to be the principals and founders of inforMD, a newly formed LLC, which is competing with HOC in contravention of the agreements. Here, to find inforMD not bound would allow an individual(s)—despite having signed an agreement

restricting him from competing against his employer either as an individual or through the formation of a new venture and designating that disputes over any alleged violation of the agreement to be in a particular forum—to form such a new venture (in this case allegedly while still employed by the original employer-company) and escape jurisdiction in the agreed forum, resulting either in transfer of the whole matter to the alternate forum for efficiency or in parallel litigation involving the former employee and his newly formed company in different jurisdictions. Under such narrow facts, the Court finds that inforMD should have foreseen being bound by the Lanham and Bagwell forum selection clauses. The Court, therefore, also denies transfer with respect to the claims against inforMD.[1]

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to transfer is denied. An appropriate Order accompanies this Opinion.

DATED: July 14, 2016

JOSE L. LINARES
U.S.D.J.

---

[1] In their moving brief, Defendants make a cursory argument that personal jurisdiction also is not present. *See* Defs.' Br. at 18. Plaintiff opposes this argument by again pointing to the Lanham and Bagwell agreements which accept jurisdiction in this Court. *See* Pl.'s Opp'n at 10. Defendant appears to concede this point as it does not address or argue for a lack of personal jurisdiction in their reply. Defs.' Reply at 12-13.